1

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                         19 cr 833 (SHS)

5    KEVIN HANDREN,

6              Defendant.
                                          Plea
7    ------------------------------x

8                                         New York, N.Y.
                                          March 24, 2021
9                                         9:30 a.m.

10   Before:

11
                        HON. SIDNEY H. STEIN,
12
                                          District Judge
13
                            APPEARANCES
14
     AUDREY STRAUSS
15        United States Attorney for the
          Southern District of New York
16   BY:  ROBERT B. SOBELMAN
          KIERSTEN A. FLETCHER
17        BENET KEARNEY
          Assistant United States Attorneys
18
     Perry Guha LLP
19        Attorneys for Defendant
     BY:  Samidh Jalem Guha
20

21   Also Present:  Christopher Bastos, NYPD
                    Special Agent Kathleen Corbett, HSI
22

23

24

25
```

```
 1                 (Case called)

 2                 THE DEPUTY CLERK:  Counsel, State your names for the

 3     record.

 4                 MR. SOBELMAN:  Robert Sobelman, Benet Kearney, and

 5     Kiersten Fletcher for the United States.  We're joined on this

 6     video conference with Detective Christopher Bastos with the New

 7     York City Police Department and Special Agent Kathleen Corbett

 8     with Homeland Security Investigations.

 9                 Good morning, your Honor.

10                 THE COURT:  Good morning.

11                 MR. GUHA:  Good morning, your Honor.  On behalf of

12     Mr. Handren, it's Samidh Guha.  That's S-a-m-i-d-h, and the

13     last name is G-u-h-a.

14                 My colleague, George Barchini, is on the phone.  His

15     spelling is G-e-o-r-g-e.  The last name is B-a-r-c-h-i-n-i.

16     We're counsel of record for Mr. Handren with the law firm Perry

17     Guha LLP.  Our client, Mr. Handren, is also present on video

18     and audio.  His last name is H-a-n-d-r-e-n, and the first name

19     is K-e-v-i-n.

20                 Good morning, your Honor.

21                 THE COURT:  Good morning, sir.

22                 Mr. Handren, can you see and hear me, sir?

23                 THE DEFENDANT:  Yes, your Honor.

24                 THE COURT:  Can you see and hear your attorney,

25     Mr. Guha?
```

 1                    THE DEFENDANT:  Yes, your Honor.

 2                    THE COURT:  Now, Mr. Handren, are you aware that you

 3       have been charged with violations of federal law?

 4                    THE DEFENDANT:  Yes, your Honor.

 5                    THE COURT:  Have you consulted with Mr. Guha about

 6       those charges?

 7                    THE DEFENDANT:  Yes, your Honor.

 8                    THE COURT:  I'm informed that you wish to enter a plea

 9       of guilty to certain of those charges.

10                    Is that correct?

11                    THE DEFENDANT:  Yes, your Honor.

12                    THE COURT:  Do you understand you have a right to

13       appear physically before me in a courtroom at 500 Pearl Street,

14       Southern District of New York, when you plead guilty?

15                    Do you understand that?

16                    THE DEFENDANT:  Yes, your Honor.

17                    THE COURT:  Do you also understand that you have a

18       right to have Mr. Guha physically next to you at that time?

19                    THE DEFENDANT:  Yes, your Honor.

20                    THE COURT:  Are you also aware that the public health

21       emergency created by the COVID-19 pandemic has interfered with

22       travel and restricted access to that courthouse?

23                    THE DEFENDANT:  Yes, your Honor.

24                    THE COURT:  Have you discussed those issues with

25       Mr. Guha?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  I have a document here that says that you

3   wish to advise me that you are willingly giving up your right

4   to appear in person and to have Mr. Guha standing next to you

5   at the time you enter a plea of guilty.

6          Did you sign that document, sir?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Are you in fact willing to give up the

9   right you have to have Mr. Guha next to you and for you to be

10  in front of me when you enter a plea of guilty?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  I'm going to sign this document.

13         Mr. Guha, you've signed this as well; correct?

14         MR. GUHA:  Yes, your Honor.

15         THE COURT:  I'm going to sign it, and I'm going to

16  direct my deputy to file it.

17         Now, Mr. Handren, I want you to know that you still

18  have the right to speak privately with Mr. Guha.  So if at any

19  time during this proceeding you wish to talk with him or he

20  wishes to talk with you, just let me know that, or he can let

21  me know that in this proceeding.  And then you'll be able to

22  set up a private line of communication with Mr. Guha.

23         Do you understand that, sir?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Now, I understand, Mr. Handren, that

1   you're not only presented by Mr. Guha, but you're also

2   represented by Danya Perry and George Barchini of the same law

3   firm, that is, Perry Guha, LLP.

4           Is that correct?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  And I want to inform you, sir, that

7   apparently Mr. Barchini submitted an application to be an

8   assistant United States attorney in the United States

9   Attorney's Office for the Southern District of New York.

10          That's not unusual in and of itself.  Especially these

11  days, it's a popular place to be.  And young lawyers who want

12  to be litigators very frequently will apply to join

13  Mr. Sobelman and his colleagues in the U.S. Attorney's Office.

14  But that represents a potential conflict here.

15          Do you understand that, sir?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Everyone is entitled under our

18  Constitution to have effective assistance of counsel.  Sir,

19  that means that you're entitled to have a counsel whose sole

20  interests are yours.

21          Do you understand that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  What I think is a potential conflict here

24  is the fact that if Mr. Barchini, one of your lawyers, has

25  applied to the U.S. Attorney's Office to be a member of that

1   office, he may, in theory, want to curry favor with them and,

2   in theory, may therefore help them in their prosecution of you

3   in this matter.

4        Now, I'm not saying that's going to happen or will

5   happen or can happen.  I'm saying it's a theoretical

6   possibility that you need to be aware of.

7        Do you understand that?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  Are you satisfied with the representation

10   of Mr. Guha and his colleagues so far?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  Let me ask a few questions about your

13   mental and physical condition, sir.

14        Are you currently seeing a doctor or psychiatrist for

15   any reason?

16        THE DEFENDANT:  No, your Honor.

17        THE COURT:  Are you currently under the influence of

18   alcohol or drugs or medicine of any kind?

19        THE DEFENDANT:  No, your Honor.

20        THE COURT:  In the past 24 hours, sir, have you taken

21   any drugs, medicine, or alcohol?

22        THE DEFENDANT:  No, your Honor.

23        THE COURT:  Are you feeling well enough to proceed

24   today?

25        THE DEFENDANT:  Yes, your Honor.

1              THE COURT:  How are you feeling today, sir?

2              THE DEFENDANT:  I feel good, your Honor.

3              THE COURT:  Is your mind clear?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Have you discussed these issues, these

6       potential issues?  That is, Mr. Barchini may be less than

7       zealous in representing you, if indeed he's seeking a position

8       with the Southern District's office.

9              Have you discussed those issues with Mr. Guha?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Have you discussed them also with

12      Mr. Barchini?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  If you wish to proceed here, sir, and

15      continue to be represented by the law firm that Mr. Guha is a

16      partner in, do you understand that you would be waiving any

17      argument that you would have after you're sentenced in this

18      case that Mr. Barchini was ineffective because he had a

19      potential conflict of interest due to his interest in joining

20      the U.S. Attorney's Office?

21             Do you understand that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Now, it's important that you understand

24      that I don't have the ability to foresee all ways in which this

25      potential conflict of interest may play itself out.  I've given

1   you what I believe is the potential framework for the potential

2   conflict.  But I don't know in what way it would actually

3   occur, if it does.

4           I want you to tell me, sir, in your own words what you

5   think I'm talking about.

6           What do you think is the problem here or the potential

7   problem that's raised by virtue of the fact that one of your

8   lawyers is seeking to join the government, which is prosecuting

9   you here?

10          Tell me in your own words.

11          THE DEFENDANT:  I understand, your Honor, that there

12  is a possible conflict of interest that Mr. Barchini would be

13  incentivized to possibly have the prosecution's best interests

14  in mind instead of mine and to curry favor with them to try and

15  gain employment with them.

16          THE COURT:  All right.  You have the right under our

17  laws to consult with another lawyer simply on the issue of

18  whether or not you should waive your right to conflict-free

19  representation.

20          In other words, if you wish, you can speak to another

21  lawyer about this issue.  And we can delay things, adjourn

22  things, and have you do that.

23          Do you want me to do that?  Do you want to speak to

24  another lawyer?  Or do you want me to appoint another lawyer to

25  represent you in connection with advising you solely on this

1   issue of a potential conflict of interest?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Do you understand that if you can't afford

4   a lawyer, I certainly will appoint a lawyer to do that free of

5   charge for you?

6              Do you understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Is there anything I've said that you want

9   me to explain further?

10             THE DEFENDANT:  No, your Honor.

11             THE COURT:  Do you wish to proceed now with

12  Mr. Barchini as one of your attorneys in this case?

13             Or do you want to stop this proceeding to think about

14  it?  Or do you want to hire a new lawyer?

15             THE DEFENDANT:  I would like to proceed, your Honor.

16             THE COURT:  Do you wish to proceed then with

17  Mr. Barchini as one of your lawyers?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Have you received any inducements,

20  promises, or threats with regard to your decision about this

21  potential conflict?

22             THE DEFENDANT:  No, your Honor.

23             THE COURT:  Is your waiver of right to conflict-free

24  representation voluntary, that is, of your own free will?

25             THE DEFENDANT:  Yes, your Honor.

 1          THE COURT:  Are you agreeing to waive all future

 2     arguments, either before me or on appeal, that you are were

 3     denied effective assistance of counsel because of

 4     Mr. Barchini's pursuit of a position as a federal prosecutor?

 5          THE DEFENDANT:  Yes, your Honor.

 6          THE COURT:  All right.  I do find now that the waiver

 7     by the defendant is knowing and voluntary.  And I apologize.  I

 8     do see that the law firm is entitled Perry Guha LLP.  I earlier

 9     said that I didn't think it was.

10          Well, that was the *Curcio* hearing, and we will proceed

11     now with the change of plea.

12          Has everything you've told me, sir, been true and

13     accurate?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Ms. Blakely, if you would administer the

16     oath at this point, I'd appreciate it.

17          (Defendant sworn)

18          THE DEPUTY CLERK:  Thank you.

19          Please state your name and spell your last name for

20     the record.

21          THE DEFENDANT:  Kevin Christopher Handren,

22     H-a-n-d-r-e-n.

23          THE COURT:  Mr. Handren, do you understand that my

24     deputy has placed you under oath and that if you answer any of

25     my questions falsely, your false or untrue answers may later be

1  used you against you in another prosecution for perjury or for

2  making a false statement?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  How old are you, sir?

5          THE DEFENDANT:  Thirty-eight years old.

6          THE COURT:  How far did you go in school?

7          THE DEFENDANT:  I have a bachelor's degree from the

8  University of Utah.

9          THE COURT:  Are you able to read, write, and speak

10 English?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  English is your native language.  Correct?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  I believe I've already asked you if you

15 are now or have recently been under the care of a doctor or a

16 psychiatrist.

17         Have you been?

18         THE DEFENDANT:  No, your Honor.

19         THE COURT:  Have you ever been treated or hospitalized

20 for any mental illness or any type of addiction, including drug

21 or alcohol addiction?

22         THE DEFENDANT:  No, your Honor.

23         THE COURT:  Who is your attorney here, sir?

24         THE DEFENDANT:  Mr. Guha.

25         THE COURT:  Mr. Guha, do you have any doubt as to

1    Mr. Handren's competence to plead at this time?

2              MR. GUHA:  No, I do not.

3              THE COURT:  Is it true, Mr. Handren, you wish to plead

4    guilty to certain of the charges against you?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Have you had a complete opportunity to

7    discuss your case with Mr. Guha and to discuss the consequences

8    to you if indeed you enter a plea of guilty today and if I

9    accept it?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  Are you satisfied with Mr. Guha and his

12    representation of you?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  And the representation of Ms. Perry and

15    Mr. Barchini of you?

16              THE DEFENDANT:  Yes, your Honor.

17              THE COURT:  On the basis of Mr. Handren's responses to

18    my questions and my observations of his demeanor as he appears

19    before me virtually today and as he appeared before me earlier

20    at the *Curcio* hearing, I make the finding that he's fully

21    competent to enter an informed plea now.

22              But before I accept a plea from you, sir, I'm going to

23    be asking you a series of questions that are intended to

24    satisfy me that you wish to plead guilty because you are guilty

25    and that you fully understand the consequences of entering a

 1   plea of guilty.

 2          I'm going to be describing to you a variety of rights

 3   you have under the Constitution and laws of the United States.

 4   You're going to be giving up those rights if we proceed with

 5   this proceeding.

 6          I want you to listen to me carefully.  And if you

 7   don't understand anything I'm saying to you or anything I'm

 8   asking, you can ask me anything you want.  You can ask Mr. Guha

 9   anything you want, as you know.  You can tell me you want to

10   speak privately with Mr. Guha.

11          Do you understand all of that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Under the Constitution and laws of the

14   United States, sir, you have a right to a speedy and public

15   trial on the charges against you which are contained in

16   superseding information S3 19 cR 833.

17          Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  If there were a trial, you would be

20   presumed innocent, and the government would be required to

21   prove you guilty by competent evidence and beyond a reasonable

22   doubt.  You would not have to prove you were innocent at a

23   trial.

24          Do you understand that?

25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  I also wish to put on the record that I do

2     find that this matter cannot be further delayed without serious

3     harm to the interests of justice.

4          Now, if there were a trial, Mr. Handren, you would be

5     presumed innocent, and the government would be required to

6     prove you guilty by competent evidence and beyond a reasonable

7     doubt.

8          You would not have to prove you were innocent at a

9     trial because the burden of proof would be on the government at

10    all times to prove guilty beyond a reasonable doubt.

11         Do you understand that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  If there were a trial, a jury composed of

14    12 people selected from this district would have to agree

15    unanimously that you were guilty.

16         Do you understand those rights?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  You have a right to be represented by an

19    attorney at trial and at every other stage of the proceedings.

20         Do you understand that?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  If you can't afford an attorney, one will

23    be provided to you at no cost to you.

24         Do you understand that?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  If there were a trial, you would have a

2     right to see and hear all of the witnesses against you,

3     Mr. Handren, and your attorney can cross-examine them.

4          You would have a right to have your attorney object to

5     the government's evidence and offer evidence on your own

6     behalf, if you so desired.  And you would have the right to

7     have subpoenas issued or other compulsory process used to

8     compel witnesses to testify in your defense.

9          Do you understand all those rights?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  If there were a trial, you would have the

12    right to testify if you wanted to.  But no one could force you

13    to if you did not want to.  Further, no inference or suggestion

14    of guilt could be drawn if you chose not to testify at trial.

15         Do you understand all of those rights?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you understand that by entering a plea

18    of guilty now, you're going to be giving up every one of the

19    rights I've been listing for you, sir?

20         You will be waiving those rights, and there will be no

21    trial against you.

22         Do you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Now, Mr. Handren, it's important that you

25    understand that you have the right to change your mind right

1   now.  And you can decline to enter a plea of guilty at any time

2   during this proceeding.

3        You don't have to enter a plea if you do not want to

4   for any reason.  That is, you don't have to enter a plea of

5   guilty if you do not want to for any reason.  You already have

6   entered a plea of not guilty.

7        Do you understand that you have the right to decline

8   to enter a plea of guilty for any reason at all?

9        THE DEFENDANT:  Yes, your Honor.

10        THE COURT:  As a matter of fact, you don't have to

11   have a reason.  You can just tell me you don't want to enter

12   it.

13        Do you understand that?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  Have you received a copy of superseding

16   information S3 19 CR 833?

17        THE DEFENDANT:  Yes, your Honor.

18        THE COURT:  Did you read it?

19        THE DEFENDANT:  Yes, your Honor.

20        THE COURT:  Did you discuss it with Mr. Guha?

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  You have the right to have me read that

23   superseding information right now on this Skype call.  Or you

24   can waive my reading of it, in which event I won't read it.

25        What's your pleasure, sir?  It's entirely up to you.

1      THE DEFENDANT:  I would like to waive that reading,

2  your Honor.

3      THE COURT:  All right.  I accept that as a knowing and

4  voluntary waiver, and I will not read the superseding

5  information.

6      Do you understand that you're charged in Count One

7  with engaging in wire fraud conspiracy in connection with the

8  conduct of telemarketing from 2005 up to at least

9  November 2019, a violation of 18 U.S. Code, Section 1349 and

10  2326?

11      You've been charged in Count Two with aggravated

12  identity theft from those same years in violation of 18 U.S.

13  Code, Section 1028(a) and (2).  You've been charged in Count

14  Three with engaging in a conspiracy to commit money laundering

15  from about those same dates.

16      And you've been charged in Count Four with unlawfully

17  distributing and possessing with intent to distribute cocaine

18  in 2018 and 2019 in violation of 21 U.S. Code, Section

19  841(a)(1) and (b)(1)(C) and 18 U.S. Code, Section 2.

20      Do you understand all of those charges, sir?

21      THE DEFENDANT:  Yes, your Honor.

22      THE COURT:  Now, sir, I wish to inform you that you

23  have a constitutional right to be charged by an indictment

24  instead of by an information.  An indictment, Mr. Handren, is a

25  charge by a grand jury, but an information is simply a charge

1   by the government.

2          Do you understand that difference?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  I have a document in front of me.  It

5   states:  "The above-named defendant" -- and that's you --

6   "who's accused of violating 18 U.S. Code 1028(a), 1349,

7   1956(h), 2326, and 21 U.S. Code, Section 841, being advised of

8   the nature of the charge and of his rights, hereby waives in

9   open court prosecution by indictment and consents that the

10  proceeding may be by information instead of by indictment."

11         Did you sign this document, sir?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Mr. Guha, did you sign it as well?

14         MR. GUHA:  Yes, your Honor.

15         THE COURT:  Do you understand, sir, that you've waived

16  the right to be charged by an indictment and you've consented

17  to being charged by an information of the government?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Do you do so, that is, did you waive that

20  right, voluntarily and knowingly?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Do you understand that if you did not

23  plead guilty, the government would have to prove each and every

24  part or element of each of those four counts in the superseding

25  information beyond a reasonable doubt at a trial?

```
 1              THE DEFENDANT:  Yes, your Honor.

 2              THE COURT:  All right.  Mr. Sobelman, if you would set

 3    forth the elements of each of those four counts.  That will

 4    take you some time, but please do so slowly and clearly.

 5    Proceed, sir.

 6              MR. SOBELMAN:  Thank you, your Honor.

 7              Count One charges the defendant with wire fraud

 8    conspiracy, which is an agreement with others to commit wire

 9    fraud, and that he entered the agreement knowingly.

10              The elements are as follows:

11              One, the defendant agreed to participate in a wire

12    fraud scheme.

13              Two, there was a scheme or artifice to defraud or to

14    obtain money or property by materially false and fraudulent

15    pretenses, representations, or promises.

16              Third, the defendant knowingly participated in the

17    scheme or artifice to defraud with knowledge of its fraudulent

18    nature and with the specific intent to defraud.

19              And fourth, in execution of that scheme, the defendant

20    used or caused the use of the internet wires, that is, wires

21    between states.

22              In addition here, there are two telemarketing

23    enhancement elements:

24              First, that the conduct of telemarketing or email

25    marketing was used in furtherance of the conspiracy.
```

 1            And second, that ten or more persons over the age of

 2    55 were victimized by the scheme.

 3            In addition, we would have to prove by a preponderance

 4    of the evidence that an act in furtherance of the conspiracy

 5    was taken in the Southern District of New York.

 6            Count Two charges aggravated identity theft which has

 7    four elements:

 8            First, the defendant knowingly transferred, possessed

 9    or used;

10            Second, without lawful authority;

11            Third, a means of identification of another person;

12            Fourth, during and in relation to the wired conspiracy

13    charged in Count One.

14            Venue is established for this crime as long as the

15    established venue -- that venue is proper as the underlying

16    charge.  So it is derivative of venue in Count One.

17            Count Three charges a money-laundering conspiracy

18    which is an agreement with others to commit a money-laundering

19    offense in violation of Section 1956 and 1957.

20            The conspiracy has two objects as alleged:

21            The first object is under 1956(a)(1)(B)(i) and has

22    five elements:

23            First, the defendant conducts or attempts to conduct;

24            Second, a financial transaction;

25            Third, knowing that the property involved in such a

1  financial transaction represents the proceeds of some form of

2  unlawful activity;

3         Fourth, which in fact involves the proceeds of

4  specified unlawful activity;

5         Fifth, while acting with the knowledge that the

6  transaction is devised, in whole or in part, to disguise the

7  nature, location, source, ownership, or control to proceeds of

8  the specified unlawful activity.

9         The second object is under 1957(a) and has six

10  elements:

11         One, the defendant engaged or attempted to engage in a

12  monetary transaction;

13         Two, of a value greater than $10,000;

14         Three, in criminally derived property;

15         Four, where property was derived from a specified

16  unlawful activity;

17         Five, the defendant knew the transaction involved

18  criminally derived property;

19         And six, the transaction took place in the

20  United States.

21         We would have to prove venue by a preponderance of the

22  evidence by showing that an act in furtherance of the

23  conspiracy occurred in the Southern District of New York.

24         Count Four charges possession with the intent to

25  distribute or distribution of a controlled substance.  This has

1    three elements as charged in this case.

2            I'm sorry, your Honor.  It appears that the defendant

3    may have lost his connection.

4            THE COURT:  I just saw that, yes.  That just happened.

5            MR. GUHA:  If it's helpful, I can call him right now

6    to see.  I'm assuming it's just a technical problem.

7            THE COURT:  Sure.  Speak with him.  Normally people at

8    this point know to dial back in, but go ahead.

9            MR. GUHA:  I'll put myself on mute and call back in in

10   case.

11           THE COURT:  Thank you.

12           (Pause)

13           THE COURT:  Mr. Handren, is that you?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  I really would like to be able to see you

16   during this plea.

17           Do you know what the issue is, sir?

18           THE DEFENDANT:  There we go.

19           THE COURT:  I see you.

20           Can you see and hear me, sir?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Thank you.

23           Now, Mr. Sobelman, I believe you had finished reciting

24   all of the elements of the four counts we're dealing with.

25           Is that correct?

1    MR. SOBELMAN:  No, your Honor.  I was just about to do

2    Count Four.  That's where I left off, if your Honor wishes.

3    THE COURT:  Go ahead, sir.

4    MR. SOBELMAN:  Count Four charges the defendant with

5    possession with intent to distribute or distribution of a

6    controlled substance, here, cocaine.  This has three elements:

7    First, the defendant knowingly possessed a controlled

8    substance;

9    Second, the defendant possessed the controlled

10   substance with the intent to distribute it to another person or

11   did in fact distribute it to another person;

12   And third, the substance that the defendant possessed

13   and were distributed contained a detectable amount of cocaine.

14   With respect to this charge, the government

15   understands the defendant waives venue.

16   THE COURT:  Mr. Handren, do you understand that those

17   are the elements the government would have to prove beyond a

18   reasonable doubt --

19   THE DEFENDANT:  Yes, your Honor.

20   THE COURT:  -- before a jury could return a verdict of

21   guilty against you?

22   Now, I wish to inform you of the maximum possible

23   penalties that can be imposed on you for each of those counts.

24   Now, the maximum possible penalty for Count One is 30

25   years in prison plus five years' supervised release plus a fine

of the greatest of $250,000 or twice the gross pecuniary gain

derived from the offense or twice the gross pecuniary loss to

individuals other than you resulting from the offense plus a

mandatory $100 special assessment.

And the maximum penalty for Count Two is a mandatory

sentence of two years' imprisonment which must be imposed

consecutively to any other incarceratory sentence imposed plus

a maximum term of supervised release of one year and a maximum

fine of the same amount as was the maximum in Count One plus a

mandatory $100 special assessment.

And the maximum penalty of Count Three is 20 years'

imprisonment, a maximum term of three years' supervised

release, a maximum fine of the greatest of $500,000 or twice

the value of the property involved in the transaction or twice

the gross pecuniary gain derived from the offense or twice the

gross pecuniary loss to individuals other than you resulting

from the offense plus a mandatory $100 special assessment.

And the maximum penalty of Count Four is 20 years in

prison, life supervised release, and a maximum fine of the

greatest of $1,000,000 or twice the gross pecuniary gain

derived from the offense or twice the gross pecuniary loss to

individuals other than you resulting from the offense plus a

mandatory $100 special assessment.

Do you understand that those are the maximum penalties

that you face for all of those four counts?  Actually, each.  I

1    listed each separately.

2            Do you understand that, sir?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Now, each of those counts also

5    contained -- and I read it to you -- the maximum penalty for

6    supervised release, the maximum term for supervised release.

7            Supervised release means that you're going to be under

8    monitoring when you're released from prison.  And that

9    monitoring will be under terms and conditions that could lead

10   to your re-imprisonment without a jury trial for all or part of

11   the term of supervised release and without credit for time

12   previously served on post-release supervision if you violate

13   any term or condition of supervised release.

14           Do you understand that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Do you also understand that I have the

17   authority to order restitution to anyone who's been injured as

18   a result of your criminal conduct?

19           Do you understand that?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Now, I told you, sir, what the maximum

22   penalties were.  But in this case, there are also minimum

23   penalties that I must impose, unless certain conditions are

24   met.

25           And those minimum penalties are as follows:

1          In Count One, it's the mandatory $100 special

2    assessment.

3          In Count Two, it's a mandatory sentence of two years'

4    imprisonment to be imposed consecutively to any other sentence

5    I impose.

6          In Count Three, it's the $100 special assessment.

7          And in Count Four, it's a mandatory minimum term of

8    three years' supervised release plus the mandatory special

9    assessment.

10          Do you understand that those are the minimum penalties

11    I must impose unless certain conditions are met?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Now, you're pleading guilty to four

14    different counts in this superseding information.

15          MR. SOBELMAN:  Your Honor, apologies.  I don't mean to

16    interrupt.  But it appears Mr. Guha may have accidentally

17    dropped from the meeting.

18          THE COURT:  All right.  Let's get him back.  I'm sure

19    he knows how to join us.

20          Thank you for watching that, sir.

21          (Pause)

22          MR. GUHA:  My apologies, your Honor.

23          THE COURT:  I don't see you yet.  There we are.  Okay.

24    Everyone is back.

25          MR. GUHA:  Your Honor, when I dropped off, you were

1    beginning to advise Mr. Handren about the mandatory penalties

2    that may apply here.

3           THE COURT:  I had not gone through the counts yet?

4           MR. GUHA:  You had gone through the maximum penalties

5    on each count, and I believe you were just about to proceed on

6    what mandatory penalties, minimum penalties, may be applicable.

7           THE COURT:  All right.  I'll restate what I was doing

8    so that Mr. Guha hears them.  I actually had done all or almost

9    all of them.  But I'll re-do them.  That's fine.  I do want you

10   to be on for each of them.

11          MR. GUHA:  Thank you, your Honor.

12          THE COURT:  The mandatory minimum for Count One,

13   Mr. Handren, is the $100 special assessment.

14          And the mandatory minimum for Count Two is two years'

15   imprisonment that has to be imposed consecutively to any other

16   sentence imposed plus a $100 special assessment.

17          The mandatory minimum for Count Three is the $100

18   special assessment.

19          And the mandatory minimum for Count Four is three

20   years' supervised release plus the mandatory $100 special

21   assessment.

22          Do you understand those are the mandatory minimums,

23   sir?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Now, I'm going to be sentencing you

1    separately on each of the four counts.

2            Do you understand that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  And I have the ability to sentence you

5    consecutively, meaning one after the other, for Counts One,

6    Two, Three, and Four.  I also have the ability to sentence you

7    concurrently on each of the counts, meaning I can sentence you

8    to serve those terms at the same time rather than one after the

9    other.

10           Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  But if I do decide to sentence you

13   consecutively, do you understand you'd face a maximum term of

14   imprisonment of 72 years in prison with a mandatory minimum of

15   two years' imprisonment?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Do you understand that if I accept your

18   guilty plea this morning, sir, and determine you to be guilty,

19   that determination may deprive you of certain valuable civil

20   rights such as the right to vote, the right to hold public

21   office, the right to serve on a jury, and the right to possess

22   any kind of firearm?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Mr. Guha, I assume your client is a

25   United States citizen.

1          Is that a correct?

2          MR. GUHA:  That is, your Honor.

3          THE COURT:  Mr. Handren, there are sentencing

4    guidelines that used to be mandatory in the federal criminal

5    justice system, and currently, since about 2005 or so, they've

6    been advisory.

7          Have you talked to Mr. Guha about the sentencing

8    guidelines?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Do you understand that I have to determine

11   what the relevant guideline range is as I commence my analysis

12   of what's appropriate to sentence you to?

13         Before I can determine what the range is, the

14   guideline range is, I receive a report from the probation

15   department about your crime and about your upbringing, your

16   finances, basically everything.

17         Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  So they're going to interview you.  Give

20   them complete and accurate information, sir, because I'm going

21   to use that report.

22         You, Mr. Guha, Mr. Sobelman will all have the ability

23   to read that and to file any objections to the findings of fact

24   and the determination of the guideline range, at least in the

25   view of the probation department, after that report is

1    delivered to everybody.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Now, after I determine what the guideline

5    range is, I then have to determine whether there are grounds to

6    depart, either upward or downward, from the guideline range.

7              Do you understand that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Even after I do that, I then have to apply

10   all of the factors in 18 U.S. Code, Section 3553(a) to

11   determine what a fair and reasonable and appropriate sentence

12   is.

13             Do you understand that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Do you understand that if you're sentenced

16   to prison, the system of parole that used to exist has been

17   abolished and you won't be released any earlier from your

18   prison term on parole?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Do you understand that if anyone has tried

21   to tell you what your sentence is going to be, everybody could

22   be wrong?  Do you understand that?

23             Because I'm the one who decides what your sentence is,

24   and I don't know what your sentence is going to be because I

25   don't know enough about your role in this crime or anything

1   else about you -- your criminal history, if any, all of the

2   factors that go into who a person is.  I just don't know any of

3   that.  So I don't know what I'm going to sentence you to.

4           Do you understand that?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  If you are sentenced to something you

7   don't think you're going to be sentenced to or if you're

8   sentenced to something that's different than what somebody told

9   you they thought you were going to get, you still are going to

10  be bound to this guilty plea, sir, and you won't be allowed to

11  withdraw it.

12          Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Now, I have a document here -- I also

15  should put on the record so that everybody knows.

16          This is a public proceeding, and I can see that there

17  are a variety of participants on this call.  I don't have any

18  information as to who those other people are.  Just be aware,

19  as I'm sure everybody is, that this is a public proceeding.

20          I have a document.  It's dated March 17.  It's seven

21  pages long.  It's from it looks like Ms. Fletcher to Mr. Guha,

22  and I will refer to this as the plea agreement.

23          Is this your signature on the last page, sir?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Mr. Guha, did you sign it, sir?

1              THE DEFENDANT:  Yes, I did, your Honor.

2              THE COURT:  Mr. Handren, did you read this document

3    before you signed it?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Did you understand it prior to signing it?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Did you discuss it with Mr. Guha prior to

8    signing it?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Did you fully understand the agreement at

11   the time you signed it?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Does this letter agreement constitute your

14   complete and total understanding of the entire agreement

15   between the government, Mr. Guha, and yourself?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Is there anything about your plea and

18   sentence that's been left out of this agreement?

19             THE DEFENDANT:  No, your Honor.

20             THE COURT:  Is everything about your plea and sentence

21   contained in this agreement?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Has anyone offered you any inducements or

24   threatened you or forced you to plead guilty?

25             THE DEFENDANT:  No, your Honor.

1          THE COURT:  Do you understand that in this plea

2     agreement, you have agreed that at least two weeks prior to

3     your sentencing you'll file with the IRS accurate amended tax

4     returns for the years 2005 through 2019 and you'll pay past

5     taxes due and owing to the IRS, including applicable penalties?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you understand that in this you've

8     agreed to make restitution in an amount I specify?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Do you understand that in this, you've

11    admitted the forfeiture allegations with respect to Counts One

12    and Three and agreed to forfeit to the United States money and

13    any property derived from the crimes that you're stating you

14    committed?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Mr. Guha, are you aware of any valid

17    reason that would prevail at trial or know of any reason why

18    Mr. Handren should not be allowed to plead guilty to Counts

19    One, Two, Three, and Four of the superseding information here?

20         MR. GUHA:  I am not, your Honor.

21         THE COURT:  Is there an adequate factual basis to

22    support Mr. Handren's plea in your view, sir?

23         MR. GUHA:  Yes, your Honor.  There is.

24         THE COURT:  And, Mr. Sobelman, in the view of the

25    government, is there an adequate factual basis to support

1    Mr. Handren's plea?

2              MR. SOBELMAN:  Yes, your Honor.

3              THE COURT:  Mr. Handren, tell me now what you did that

4    makes you guilty of Counts One, Two, Three, and Four.

5              THE DEFENDANT:  On Count One, your Honor, from in or

6    about 2005 until November 2019, I conspired and agreed with

7    other individuals to devise a scheme to defraud for the purpose

8    of obtaining money.

9              In furtherance of this scheme, I and others in the

10   conspiracy used wire communications in interstate commerce.  I

11   ran sales floors where we offered business services to victims

12   knowing that the services would in fact provide little or no

13   value to the victims' businesses.

14             On Count Two, from in or about 2005 until

15   November 2019, I transferred the identification of other

16   people, including credit card numbers, to further the wire

17   fraud charge in Count One to which I pled guilty just now.

18             For example, I bought and sold leads that were stolen

19   to further our scheme.

20             Count Three, from in or about -- I'm so sorry, your

21   Honor.

22             (Pause)

23             THE DEFENDANT:  Sorry about that, your Honor.

24             Count Three, from in or about 2005 until November of

25   2019, I conspired and agreed with other individuals to engage

1    in financial transactions involving the proceeds of unlawful

2    activity.

3           I and the others in the conspiracy designated the

4    transactions to conceal and disguise the nature of these

5    proceeds.  Again, as an example, my partners and I used other

6    peoples' merchant accounts, and we transferred money between

7    merchant accounts.  We also sent money to other merchant

8    accounts that were located overseas.

9           On Count Four, in or about 2018 or 2019, I distributed

10   and possessed approximately $600 of a controlled substance

11   which I believed contained cocaine.

12          I received funds from another individual to pick up a

13   small quantity of this substance and delivered the substance to

14   that person.  I did not receive any payment for my role in this

15   transaction, and I did not use any of the substance in

16   question.

17          With respect to Counts One, Two, and Three, a part of

18   the conduct occurred in the Southern District of New York.

19          With respect to Count Four, I am waiving any

20   challenges to venue which may otherwise exist.

21          Your Honor, I want to be clear.  I take full

22   responsibility for my objections, and I knew it was wrong.

23          THE COURT:  Did you know it was illegal?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Now, I'm intrigued by the stolen leads.

1    Tell me a little bit about that.

2            THE DEFENDANT:  I participated in distributing leads

3    that were not mine that we obtained illegally and then

4    forwarded it on to individuals to sell products and services

5    that had little to no value.

6            THE COURT:  In other words, you didn't get the leads

7    from legitimate fashion.

8            Is that it?

9            THE DEFENDANT:  That is correct, your Honor.

10           THE COURT:  Government, what's the evidence against

11   Mr. Handren that you have?

12           MR. SOBELMAN:  Your Honor, before I recite that for

13   the Court, I would just ask the Court to clarify.

14           I don't know whether I heard it correctly or not with

15   Mr. Handren, whether he said he used merchant accounts to send

16   money abroad or bank accounts.  I'm not sure if he misspoke or

17   I misheard.  I just want to make sure the record is clear.

18           THE COURT:  Mr. Handren.

19           THE DEFENDANT:  I'm sorry, your Honor.  I believe I

20   misspoke.  I used bank accounts to send money overseas.

21           THE COURT:  Mr. Sobelman, anything else?

22           MR. SOBELMAN:  I don't believe so, your Honor.

23           THE COURT:  What evidence do you have here against

24   him?

25           MR. SOBELMAN:  Yes, your Honor.  If the case proceeded

1    to trial, the evidence would include, among other things:

2            Cooperating witness testimony, testimony from victims

3    and documentary evidence regarding victims being harmed by the

4    scheme; search warrant results from premises warrants of

5    residences, telemarketing floors, and email and other

6    electronic accounts; bank and other financial records; law

7    enforcement testimony; testimony of a forensic accountant

8    showing the tracing of funds; and recordings of members of the

9    conspiracy that were made in the course of the investigation.

10            THE COURT:  Mr. Handren, how do you now plead to the

11    charges in Counts One, Two, Three, and Four of superseding

12    information S3 19 cr 833?  Guilty or not guilty, sir.

13            THE DEFENDANT:  Guilty.

14            THE COURT:  Are you pleading guilty because you are

15    guilty?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  Are you pleading guilty voluntarily and of

18    your own free will?

19            THE DEFENDANT:  Yes, your Honor.

20            THE COURT:  Mr. Guha, do you wish anything else on the

21    allocution?

22            MR. GUHA:  No, your Honor.

23            THE COURT:  Mr. Sobelman?

24            MR. SOBELMAN:  No, your Honor.

25            THE COURT:  Mr. Handren, because you acknowledge

1   you're guilty as charged, because I find you know your rights

2   and are waiving them knowingly and voluntarily, because I find

3   your plea is entered knowingly and voluntarily and is supported

4   by an independent basis in fact containing each of the

5   essential elements of the offense, I accept your guilty plea,

6   sir.  And I determine you to be guilty of Counts One, Two,

7   Three, and Four.

8           I'm setting the date for sentence at September 24 at

9   11:00 a.m. in my courtroom.  I'm going to keep you out on bail,

10  sir.  But you have to continue to abide by all of the

11  conditions that have been imposed on you so far.

12          Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  If you violate any of those conditions, a

15  petition may be brought against you.  And it's very possible

16  and likely, depending on what the violation would be, that you

17  would be remanded.

18          Do you understand?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  So it's important that you follow all of

21  those conditions.  I'll see you then on September 24 at

22  11:00 a.m.

23          Mr. Guha, anything else?

24          MR. GUHA:  Nothing else, your Honor.  Thank you and

25  your chambers for all the assistance in setting this up so we

1    could do it by video.

2              THE COURT:  Of course.

3              Mr. Sobelman, anything else?

4              MR. SOBELMAN:  No, your Honor.  Thank you.

5              THE COURT:  All right, everyone.  Stay safe.  Thank

6    you.  The Court is leaving the call.

7              (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25